United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYOGI HOLDING PVT LTD., | No. C-11-0592 CW |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION RE PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS [Docket No. 35]** |
| SECURE REMOTE SUPPORT, INC., ET. AL, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff iYogi Holding Pvt. Ltd ("Plaintiff") brings a Motion for Default Judgment ("Motion") Against Defendants Secure Remote Support and Joseph Ward Clark ("Defendants"[1]) in which it seeks default judgment and a permanent injunction.  A hearing on the Motion was held on Friday, October 21, 2011 at 9:30 a.m.  For the reasons stated below, it is recommended that the Motion be GRANTED.

## II.    BACKGROUND

Plaintiff iYogi, a provider of remote computer technical services, "is a Mauritius corporation with a place of business at 291 Broadway, Suite 803, New York City, New York 10007."  Complaint ¶ 15.  iYogi "is a leading provider of remote computer technical support services. . . . and has rendered its Services to approximately 100,000 customers in the United States, including many in California."  *Id.* at ¶ 16.

---

[1]Defendant Holly J. Slocum was dismissed from this action by Plaintiff on April 26, 2011.  *See* Docket No. 30.

Plaintiff alleges that it promotes and offers its services, in part, through a website using the domain name "iyogi.net." *Id*. at ¶ 18.  Plaintiff asserts that its website receives substantial traffic; for example, in April 2010, the website received approximately 260,000 unique visitors. *See id*. (citing Exhibit A, printout of the home page of iyogi.net).  Plaintiff conducts its advertising on the internet, including through paid advertising through search engines. *Id*. at ¶ 19.  iYogi relies upon results yielded by search engines in response to queries from customers who are looking for computer technical services. *Id*.  Plaintiff alleges that its "only other way to attract customers is through word-of-mouth, including customer recommendations on the internet, such as Reviews on consumer websites." *Id*.

Plaintiff owns U.S. Trademark Application No. 85044767 for the mark "IYOGI," which is dated May 21, 2010.[2] *Id.* ¶ 21.  Plaintiff alleges that it has been promoting its services under the IYOGI mark and trade name in the United States since as early as March 2006 and that its use of the mark and trade name has been continuous since the date of first use and has not been abandoned. *Id*. at ¶ 20.

According to Plaintiff, Defendant SRS is a Washington corporation with its principal place of business at 6715 NE 63rd Street, Vancouver, Washington 98661. *Id*. at ¶ 22.  Plaintiff maintains that, like iYogi, SRS provides remote computer technical support services. *Id.*  SRS conducts business throughout the United States, including within this district. *Id.*  Plaintiff further claims that SRS promotes its services through its website ("secureremotesupport.com") and through online advertisements and search engine results. *Id*. at ¶¶ 25-26.

According to Plaintiff, at some point prior to filing the Complaint, Defendants were making claims about iYogi's Services that were false, misleading and defamatory. *Id*. at ¶ 27.

According to the Complaint, Defendants' website "secureremotesupport.com" contains a "Blog" section, which contains false, misleading and defamatory statements about Plaintiff's business. *Id.* at ¶ 28 and Exhibit C.   These statements are followed by a hyperlink leading to a

---

[2]The application is for "technical support services, namely troubleshooting of problems with computer hardware, computer software, computer peripherals, cameras and consumer electronics." Compl. at ¶ 21.

United States District Court

For the Northern District of California

website known as "iyogireviewsonline.com." *Id.* at ¶ 28 and Exhibit D.  This website is owned and operated by Defendants, but provides no indication that it is connected in any way to SRS or other Defendants.  *Id*. at ¶ 29.  Rather, the website leads consumers to believe that iyogireviewsonline.com is an interactive computer service operated by a neutral party.  *Id*. (citing Exhibit E, a copy of a printout from the WhoIs database listing the administrative and technical contact for the domain name as joewclark@comcast.net, email address of Defendant Joseph Ward Clark).  One section of Defendants' website, iyogireviewsonline.com, is entitled "iYogi News."  *Id.* at ¶ 30.  In that section, the "article" states that iYogi has a Better Business Bureau "F" rating.  *Id.*  Plaintiff alleges that this statement is false.  Other statements on the iyogireviewsonline.com website misstate the number of unresolved complaints against Plaintiff.  *Id.* at ¶¶ 31-35.  Plaintiff further alleges that Defendants knew that their statements on iyogireviewsonline.com were false, deceptive and misleading, or that Defendants were reckless with respect to their false, deceptive and misleading statements.  *Id.* at ¶ 36.  Plaintiff alleges that Defendants' false statements have interfered with Plaintiff's prospective business relationships and have resulted in lost sales and opportunities for Plaintiff.  *Id*. at ¶¶ 38-39.

Plaintiff further alleges that Defendants have intentionally published false, misleading and defamatory reviews, testimonials and comments regarding Plaintiff's services on other consumer websites (without disclosing the fact that the authors of these negative comments have a material connection with SRS, an iYogi competitor) with the intention of damaging Plaintiff's business reputation.  *Id.* at ¶¶ 40-41.  Plaintiff alleges that the purported customer names submitted with the negative reviews are in fact affiliated with Defendant.  *Id.* at ¶ 42.  For example, one negative review purportedly authored by a customer of Plaintiff named Karen Wilshire is identical to another review posted on a different website.  *Id.*  Plaintiff has no record of a customer named Karen Wilshire.  *Id.* at ¶ 43.

The summons and Complaint were served on Defendant Secure Remote Support on February 14, 2011.  *See* Docket No. 11; *see also,* Declaration of Nathan E. Ferguson in Support of Plaintiff's Motion for Default Judgment Against Secure Remote Support and Joseph Ward Clark ("Ferguson Decl.") ¶¶ 3-4.  Defendant Joseph Ward Clark was served with the Complaint on March 26, 2011.  *Id.* at ¶ 7.  Defendants failed to file a responsive pleading or otherwise appear in this action.  The

**United States District Court**
For the Northern District of California

1    Court entered default under Fed. R. Civ. P. 55(a) against Defendant Secure Remote Support on April

2    5, 2011, and against Defendant Joseph Ward Clark on April 22, 2011.  *See* Docket Nos. 21, 29.

3    Plaintiff now brings a motion for entry of default judgment pursuant to Fed. R. Civ. P. 55(b).

4         Plaintiff asserts seven claims against Defendants: (1) intentional interference with

5    prospective economic advantage; 2) unlawful business practices and unfair competition, Cal. Bus.

6    Prof. Code § 17200, *et. seq.*; 3) common law unfair competition; 4) false or misleading advertising –

7    Cal. Bus. & Prof. Code § 17500 *et. seq.*; 5) trade libel; 6) false advertising in violation of §

8    43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125; and 7) violation of Anticybersquatting Consumer

9    Protection Act, 15 U.S.C. § 1125(d).  Compl. ¶¶ 72-113.  Plaintiff seeks a permanent injunction

10   aimed at enjoining Defendants from falsely disparaging Plaintiff and its services and requiring

11   Defendants to take affirmative steps to remedy these allegations.  Motion 3-7.

12        On September 9, 2011, the undersigned issued an order continuing the hearing on this

13   Motion and requested further briefing from the parties to address Plaintiff's bases for personal

14   jurisdiction and venue in this district.  Plaintiff filed its Memorandum in Support of Personal

15   Jurisdiction and Venue ("Supp. Memo") on September 23, 2011.  Defendants did not file an

16   opposing brief.

17        In this memorandum, Plaintiff argues that this Court has both general and specific

18   jurisdiction over the Defendants.  Plaintiff asserts Defendants are subject to the exercise of general

19   jurisdiction because (1) they engage in sales and marketing activities in California, (2) their

20   interactive websites were accessible in California, (3) they posted reviews on third-party websites

21   based in California, and (4) they provided services to California residents.  Supp. Memo at 4.

22   Plaintiff further alleges that SRS made its services available throughout the United States, including

23   all over California, by phone and via the internet.  *Id.*  Furthermore, Plaintiff alleges that SRS has

24   promoted and offered its services through its website and other online advertising that was available

25   to consumers throughout the United States, including California.  *Id.* at 4-5.  Plaintiff argues that this

26   combination of activities constitutes "continuous and systematic" business contacts with the

27   Northern District.  *Id.* at 5.

28        Plaintiff also argues that this Court has specific jurisdiction over Defendants.  *Id.*  First,

United States District Court

For the Northern District of California

Plaintiff argues that Defendants have purposefully availed themselves of the privileges of doing business in California by operating a website through which customers in this District used Defendants' services.  *Id.* at 6.  In particular, Plaintiff claims that Defendants' website allowed California residents to communicate with Defendants using an online interactive chat tool.  *Id.*  Additionally, Plaintiff argues that Defendants purposefully availed themselves on the forum by directing their tortious conduct at California.  *Id.* at 7.  Plaintiff further argues that even though Defendants' office is purportedly in Washington, physical presence in the district is not necessary to establish purposeful availment.  *Id.* at 7.

Second, Plaintiff argues that it meets the second element to establish specific jurisdiction because its claims in this case arose out of Defendants' conduct in this District.  *Id*. at 8.  Plaintiff claims that Defendants knowingly aimed their misconduct at this District by posting reviews on websites that are based in this District.[3]  *Id.*  According to Plaintiff, among the websites on which Defendants posted their reviews, a disproportionate number are owned and operated out of California and are utilized by consumers within California.  *Id.*  Furthermore, Plaintiff claims that some of the reviews even purport to be written by California residents and/or about specific California businesses, which make these reviews more likely to cause injury in California.  *Id.* at 8-9.  Plaintiff also argues Defendants have not only conducted business and committed torts within the Northern District, but they have also directly targeted residents that live in this District.  *Id*. at 9.  For example, some of the posted reviews were specifically targeted at consumers of computer technical services in Santa Rosa, California.  *Id.* (*See* Compl. at ¶¶ 58-59 and Exhibit Q).  Finally, Plaintiff argues that the alleged violations of iYogi's trademark rights caused confusion and injury in the Northern District.

Third, Plaintiff asserts that it meets the last element to establish specific jurisdiction because the Northern District's exercise of jurisdiction over Defendants is reasonable.  *Id.* at 9.   Specifically,

---

[3]Plaintiff claims that Defendants' posted their reviews on the following websites located in this district:  "SiteJabber," located in San Francisco, CA; "Digg, Inc.," located in San Francisco, CA; "Merchant Circle," located in Mountain View, CA; "associatedcontent.com" is owned by Yahoo! Inc., which is located in Sunnyvale, CA; "Insider Pages," located in San Francisco, CA; "CityGrid Media LLC," located in West Hollywood, CA.

United States District Court

For the Northern District of California

Plaintiff claims it satisfies each of the seven factors typically analyzed to determine the reasonableness of personal jurisdiction. *Id.* First, Defendants' degree of purposeful direction of its business activities toward California is significant. *Id.* at 10. Second, because Defendants are presumably located in Washington and with the advances in transportation and telecommunications, coupled with the increase in interstate practice of law, any burdens litigating in the Northern District are substantially less than they used to be. *Id.* (citing *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007)). Third, there is nothing in the record to indicate that litigating this case in California would create a conflict with the sovereignty of Washington. *Id.* Additionally, Plaintiff asserts that the sovereignty concerns are not at issue because the analysis of its federal and California claims would be the same whether in California or any other state. *Id.* at 11. Fourth, Plaintiff argues that California has a strong interest in allowing iYogi to seek redress for its injuries that were allegedly suffered in California. *Id.* Fifth and sixth, litigating in this forum, if Defendants were not in default, would be important to Plaintiff and would be efficient because of the disproportionate number of consumer review websites located in this district. *Id.* And Seventh, Plaintiff argues that while an alternative forum may exist, the Northern District is convenient to iYogi and a large number of potential witnesses and custodians of evidence. *Id.* Furthermore, because Defendants have not appeared in this case and have not provided any reason why this action should be moved to another forum, this factor favors California's exercise of personal jurisdiction over the Defendants. *Id.*

Finally, Plaintiff argues that venue in the Northern District is proper under 28 U.S.C. § 1391(b), which states that an action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred. *Id.* at 12. Plaintiff asserts that a substantial part of Defendants' conduct that gave rise to Plaintiff's trademark infringement, false advertising, unfair competition, and related claims occurred in the Northern District. *Id.*

## III. ANALYSIS

### A. Personal Jurisdiction

As a preliminary matter, this Court must determine whether or not it has personal jurisdiction over Defendants Secure Remote Support and Joseph Ward Clark who are alleged to reside and/or conduct substantial business in the State of Washington. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir.

United States District Court

For the Northern District of California

1   1999) (holding that the court properly raised sua sponte the question of whether there was personal

2   jurisdiction over Iraq before determining whether default judgment should be entered).  In *Tuli*, the

3   Ninth Circuit explained that where a plaintiff seeks default judgment, the court may not assume the

4   existence of personal jurisdiction, even though ordinarily personal jurisdiction is a defense that may

5   be waived, because a judgment in the absence of personal jurisdiction is void.  *Id.*  Where there are

6   questions about the existence of personal jurisdiction in a default situation, the court should give the

7   plaintiff the opportunity to establish the existence of personal jurisdiction.  *Id.*

8          Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal courts in

9   California may exercise jurisdiction to the extent permitted by the Due Process Clause of the

10  Constitution.  *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  The Due Process Clause

11  allows federal courts to exercise jurisdiction where either: 1) the defendant has had continuous and

12  systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the

13  court; or 2) the defendant has had sufficient minimum contacts with the forum to subject him or her

14  to the specific jurisdiction of the court.  *Id.* at 1320.

15                    **1.      General Jurisdiction**

16         General jurisdiction is found where the defendant's contacts with the forum are so substantial

17  or continuous and systematic that the defendant can expect to be haled into court there, even if the

18  action is unrelated to its contacts.  *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d

19  1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

20  415 (1984).  Factors that the court considers in determining whether general jurisdiction exists

21  include: "whether the defendant makes sales, solicits or engages in business in the state, serves the

22  state's markets, designates an agent for service of process, holds a license, or is incorporated there."

23  *Id.* (citing *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1478 (9th Cir. 1986)).

24  For example, in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-49 (1952), the

25  Supreme Court upheld a finding of general jurisdiction where the president of a Phillippines-based

26  corporation maintained an office in the forum state, had bank accounts in the forum state, and held

27  several directors' meetings in the forum state.

28         Here, Plaintiff claims that the exercise of general jurisdiction over Defendants is proper

7

1    because Defendants engaged in sales and marketing in California, their websites were accessible in

2    California, the shill reviews were posted on California-based websites, and they provided services to

3    California residents.  Supp. Memo 4.

4          The Court concludes that Defendants' contacts are not significant enough to support a

5    finding of general jurisdiction because Defendants' only true presence in California is its online

6    accessibility and business transactions, the volume of which is unknown.  The record does not

7    indicate that Defendants maintain any employees or offices in California, hold any bank accounts or

8    licenses here, or designate an agent for service of process.  Therefore, the Court's exercise of

9    personal jurisdiction over the Defendants is contingent on a finding of specific jurisdiction.

10                         **2.      Specific Jurisdiction**

11         Courts apply a three-part test in determining whether specific jurisdiction exists:

12

13         (1) The nonresident defendant must do some act or consummate some transaction
           with the forum or perform some act by which he purposefully avails himself of the
           privilege of conducting activities in the forum, thereby invoking the benefits and
14         protections of its laws; (2) the claim must be one which arises out of or results from
           the defendant's forum-related activities; and (3) exercise of jurisdiction must be
15         reasonable.

16   *Panavision*, 141 F.3d at 1320 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270

17   (9th Cir. 1995) (quotation marks omitted)).  The plaintiff bears the burden of satisfying the first two

18   prongs.  If the plaintiff does so, then the burden shifts to the defendant to prove that exercise of

19   jurisdiction would not be reasonable.  *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d

20   1218, 1228 (9th Cir. 2011) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *Burger

21   King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).  The Court concludes that the factual

22   allegations and evidence support a finding of specific jurisdiction over Defendants.

23                         **a.      Purposeful Availment**

24         In order to satisfy the first prong of the test for specific jurisdiction, a defendant must have

25   either purposefully availed itself of the privilege of conducting business activities within the forum

26   or purposefully directed activities toward the forum.  *Panavision*, 141 F.3d at 1320.  Purposeful

27   availment typically consists of action taking place in the forum that invokes the benefits and

28   protections of the laws of the forum, such as executing or performing a contract within the forum.

                                             8

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  To show purposeful availment, a plaintiff must demonstrate that the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state."  *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).  Purposeful direction usually consists of actions outside the forum state that are directed at the forum and applies to suits sounding in tort. *Schwarzenegger*, 374 F.3d at 803.

   "In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." *Jeske v. Fenmore*, 2008 WL 5101808, at *4 (C.D. Cal. Dec. 1, 2008) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)).  "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  Personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents.  *See Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1077-78 (C.D. Cal. 1999) (holding that the exercise of personal jurisdiction was appropriate based on the "highly commercial" nature of defendant's website); *See also, Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 1109, 1122 (C.D. Cal. 2009) (holding that the exercise of personal jurisdiction was appropriate because "by operating a highly commercial website through which regular sales of allegedly infringing products are made to customers in [the forum state], [the defendants] have purposefully availed themselves of the benefits of doing business in this district").

   Here, Plaintiff asserts that Defendants have purposefully availed themselves by conducting business in this state and by directing tortious conduct toward this state.  With regard to conducting business in this state, the Court concludes that the highly commercial nature of SRS's website is sufficient to determine that Defendants have purposefully availed themselves of the benefits of doing business in California.  In particular, SRS conducts its computer repair services throughout the

United States District Court

For the Northern District of California

1   United States over the internet and advertises, in part, through paid internet search engine results.

2   Compl. at ¶¶ 24-26.  SRS's website also implies that its services are available to customers outside

3   of its home state.  *Id.* at Exhibit C, p. 6 ("Our secure software enables. . . our technicians to access

4   your computer from our offices in Washington State.  You monitor and control our access, while we

5   perform the tasks necessary[.]").  In addition, some of the alleged shill reviews are purported to be

6   authored by California residents and about specific California businesses.  Supp. Memo 8-9.

7   Accordingly, by advertising and offering their services for sale online and by posting reviews that

8   are relevant to California residents, Defendants intended and expected to engage California

9   customers.  *See Stomp*, 61 F.Supp.2d at 1078 ("By maintaining a commercial website through which

10  it markets and sells its goods, [the defendant] has reached out beyond its home state. . .to avail itself

11  of the benefits of the California forum. . . .[The defendant] has placed its products into the stream of

12  commerce intending that they would be purchased by consumers with access to the Web, including

13  California citizens.").  Furthermore, the court in *Stomp* explained that because the defendant

14  marketed and sold products over the internet, it was not unexpected to be haled into court in

15  California where a large portion of the world's internet users presumably reside.  *Id.* at 1079 (citing

16  *ACLU v. Reno*, 929 F.Supp. 824, 831 (E.D. Pa. 1996)).  Although Plaintiff has not provided any

17  direct evidence or details about Defendants' California business activities other than general

18  statements in its Complaint, Compl. at ¶ 22,  the Court is nonetheless persuaded by the highly

19  commercial nature of SRS's website and the reviews used to promote SRS's services.

20        In the alternative, the purposeful availment element can be satisfied based on a party's

21  tortious conduct directed at the forum.  *See Panavision*, 141 F.3d at 1322.  Purposeful direction

22  exists when a defendant has committed an act outside of the forum state that was intended to and

23  does in fact cause injury within the forum.  *Calder v. Jones*, 465 U.S. 783, 788-89 (1984).  Under the

24  *Calder* "effects test" the defendant must have (1) committed an intentional act, (2) expressly aimed

25  at the forum state, (3) that causes harm the defendant knows is likely to be suffered in the forum

26  state.  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting

27  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.

28  2006)).  Here, Plaintiff has satisfied the *Calder* "effects test," and therefore has demonstrated that

United States District Court
For the Northern District of California

Defendants have purposefully directed their tortious conduct at the forum.

### *Intentional Act*

The intentional act element is satisfied where the defendant performs an act with the intent to perform an actual, physical act; the defendant need not have the intent to accomplish a result or consequence of the act. *Id.* Here, Defendants committed an intentional act by posting shill reviews about Plaintiff on consumer review websites and by operating their own websites that posted false, misleading and defamatory statements about Plaintiff's business. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (operating a passive website was an intentional act).

### *Express Aiming*

The defendants' conduct must be expressly aimed at the forum to satisfy the second part of the effects test. *Brayton*, 606 F.3d at 1130. The Ninth Circuit has emphasized that "'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction, . . . and that 'something more' means conduct expressly aimed at the forum." *Id.* at 1129 (internal citations omitted). The maintenance of a passive website alone does not satisfy the express aiming requirement, but "operating [] a passive website in conjunction with 'something more' – conduct directly targeting the forum – is sufficient." *Rio Props.*, 284 F.3d at 1020. In *Brayton,* the Ninth Circuit held that a defendant that had copied content from the plaintiff's website and placed it on its own website was directly aimed at the forum because, under the facts of that case, the defendant had intentionally entered into direct competition with the plaintiff for customers within the forum. 606 F.3d at 1129. In contrast, in *Love v. Associated Newspapers, Lt.,* 611 F.3d 601, 609 (9th Cir. 2010), the Ninth Circuit held that where defendants' marketing activities were directed entirely at markets in United Kingdom and Ireland, the conduct was not expressly aimed at California, even though the defendant was aware of the plaintiff's activities in California.

Additionally, "[w]here a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." *Mavrix Photo*, 647 F.3d at 1231. In *Mavrix*, the plaintiff, a Florida corporation, sued the defendants, an Ohio corporation and its CEO, in the Central District of California for copyright infringement stemming from the unauthorized use of copyrighted photos on the defendants' website.

United States District Court

For the Northern District of California

1    The district court granted the defendant's motion to dismiss for lack of personal jurisdiction.  *Id.* at

2    1223.  The Ninth Circuit reversed, holding that the defendants were subject to specific personal

3    jurisdiction in California because their website was accessed by a substantial number of California

4    residents and the defendants profited from advertisements displayed on their website that

5    specifically targeted California residents.  *Id.* at 1230.  The court further explained that this holding

6    was contingent on two factors: first, the website was a large publication that sought a nationwide

7    audience and the defendants could count on reaching consumers in all fifty states; and second, the

8    defendants sought commercial gain from these consumers [via internet advertising sales], allowing

9    the court to conclude that the business obtained from any state was not random, fortuitous or

10   attenuated.  *Id.* at 1230-31.

11        Here, the Court finds that Defendants' conduct was expressly aimed at California.  First, like

12   *Brayton*, because Plaintiff and Defendants both offer remote computer repair services on a

13   nationwide basis they are in direct competition with each other.  By posting shill reviews on

14   California-based websites accessible by California residents, Defendants potentially damaged

15   Plaintiff's business reputation and opportunities within California.  Second, some of these reviews

16   purport to be authored by a California resident – again indicating that the Defendants knew that their

17   conduct would reach California consumers.  Finally, Plaintiff claims that Defendants violated

18   iYogi's trademark rights by engaging in false advertising and violating the Anticybersquatting

19   Consumer Protection Act, which resulted in harm suffered in California.  Supp. Memo at 9 (citing

20   *Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F.Supp. 1343, 1346-47 (D. Or. 1991) ("The cause of

21   action for a trademark violation arises in the place where the confusion is likely to occur.").

22   Therefore, by violating Plaintiff's trademark rights, Defendants expressly aimed their tortious

23   conduct at California.

### *Foreseeable Harm*

25        The third element of the *Calder* "effects" test requires that the defendant's intentional act

26   must have foreseeable effects in the forum.  *Brayton*, 606 F.3d at 1131.  "[T]his element does not

27   require that the brunt of the harm be suffered in the forum, . . . [it] may be established even if 'the

28   bulk of the harm' occurs outside the forum."  *Id.*  In *Brayton*, the court held it was foreseeable that

United States District Court

For the Northern District of California

1    Brayton Purcell would suffer harm by the defendant's infringement of its copyrighted materials,

2    including harm to its business reputation and lost profits. *Id.* In *Mavrix*, 647 F.3d at 1231, the court

3    stated that, in determining the foreseeable harm to a corporation, economic harm can be suffered in

4    both where the bad acts occurred and where the corporation has its principal place of business.

5    (citing *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) ("[J]urisdictionally

6    sufficient harm may be suffered in multiple forums.")). Accordingly, the court in *Mavrix* reasoned it

7    was foreseeable that the defendants' republishing of the plaintiff's copyrighted photos would cause

8    economic harm by destroying the market value of the photos. *Id.* Furthermore, this harm was

9    foreseeable not only in Florida, the plaintiff's principal place of business, but also in California,

10    where a significant number of California residents would have purchased publications containing the

11    photos. *Id.* at 1231-32.

12        Here, it was foreseeable that Defendants' intentional acts of posting shill reviews and

13    operating their websites would cause harm to Plaintiff in California. Plaintiff maintains that

14    Defendants knew their conduct would damage Plaintiff's business, reputation and goodwill, and

15    such conduct has interfered with Plaintiff's prospective sales and business relationships and has led

16    to lost sales and opportunities. *See, e.g.,* Compl. at ¶¶ 37-39. There is evidence to support this

17    conclusion. Plaintiff and Defendants are competitors, both of which provide services over the

18    internet. In that context, Plaintiffs specifically chose to post negative reviews of Plaintiff on

19    California-based websites, some of which purported to be by California residents.

20        In sum, because Plaintiff has satisfied all three elements of the *Calder* "effects" test, the first

21    prong of establishing specific personal jurisdiction has been established.

22                     **b.     Claim Arises out of Forum-Related Activities**

23        The second prong of the test for specific jurisdiction requires that the claim be one that arises

24    out of or relates to the defendant's activities in the forum. *Panavision*, 141 F.3d at 1320. This

25    requires a showing of "but for" causation. *Id.* at 1322 ("We must determine if the plaintiff

26    Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward

27    Panavision in California."). Here, Defendants' contacts with the forum are their promotion and

28    distribution of false and misleading information directed to customers of iYogi in this state and the

13

infringement of iYogi's trademark.  If not for Defendants' conduct and infringement, Plaintiff would not have been injured.  *See id.* (finding "but for" causation to be met because but for defendant's infringing activity, the injury to plaintiff would not have occurred).  Accordingly, the Court concludes that the second requirement for specific jurisdiction is satisfied.

### c.      Reasonableness of Exercise of Jurisdiction

The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction must comport with fair play and substantial justice.  *Id.* at 1320.  To determine whether the exercise of jurisdiction over a non-resident defendant comports with fair play and substantial justice, a court must consider seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendants of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  There is a presumption that the exercise of jurisdiction is reasonable when the first two prongs of the specific jurisdiction test have been met.  *See Schwarzenegger*, 374 F.3d at 802 (stating that after the plaintiff meets his burden to satisfy the first two prongs, the burden then shifts to the defendant to present a "compelling case" that jurisdiction is unreasonable).  The reasonableness factors enumerated in *Core-Vent* weigh in favor of finding that the exercise of jurisdiction comports with fair play and substantial justice in this case.

First, the extent of Defendants' purposeful interjection into the forum state's affairs is unknown, as Plaintiff has not alleged or presented evidence of the amount of customers Defendant has targeted in this forum.  Therefore this factor is neutral.

Second, while there is some burden on Defendants, as residents of Washington, to litigate in California, the inconvenience is not so great as to deprive them of due process, particularly given Defendants' purposeful availment of the benefits of conducting business within the forum.  *See Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation

United States District Court

For the Northern District of California

1   of due process, it will not overcome clear justifications for the exercise of jurisdiction.'").

2   Therefore, this factor weighs in favor of California's exercise of jurisdiction.

3          Third, personal jurisdiction is disfavored where it potentially creates a conflict with the

4   sovereignty of another state.  However, "the sovereignty barrier is not particularly high when

5   defendant is merely from another state." *Autodesk, Inc. v. RK Mace Engineering, Inc.*, 2004 WL

6   603382, at *7 (N.D. Cal. Mar. 11, 2004) ("Forcing a Missouri resident . . . to litigate in California,

7   especially on a federal claim, poses little threat to Missouri's sovereignty").  In the present case,

8   there is nothing in the record that indicates the exercise of personal jurisdiction over Defendants

9   would create a conflict with the sovereignty of Washington.  Therefore, this factor favors the

10  exercise of jurisdiction in California. *CE Distrib. LLC, v. New Sensor Corp.*, 380 F.3d 1107, 1112

11  (9th Cir. 2007).

12         Fourth, the forum state has a strong interest in adjudicating this dispute.  Although none of

13  the parties is a California citizen, Plaintiff claims it has rendered its services to "many"[4] customers in

14  this forum, claims to have suffered damage as a result of Defendants' misleading, defamatory and

15  infringing activities in this forum, and alleges that Defendants have targeted its false and deceptive

16  practices toward California citizens.  Plaintiff argues in its supplemental brief that, "California

17  maintains a strong interest in providing an effective means of redress for its *residents* tortiously

18  injured by commercial misappropriation."  Supp. Memo 11 (quoting *Sinatra v. Nat'l Enquirer, Inc.*,

19  854 F.2d 1191, 1200 (9th Cir. 1988) (emphasis added)).  Therefore, Plaintiff claims that California

20  has a strong interest in providing redress for iYogi.  *Id.*  However, Plaintiff, admittedly, is not a

21  resident of California as it is a Mauritius corporation and maintains a business address in New York.

22  Compl. at ¶ 15.  The Court is persuaded, though, by California's interest in protecting its citizens

23  from consumer confusion.  *See Nissan Motor Co. Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d

24  1154, 1161 (C.D. Cal. 2000) ("California has a strong interest in protecting its citizens from

25  trademark infringement and consumer confusion").  Therefore, because Defendants' conduct

26

27         ───────────────
           [4]Plaintiff states it has rendered its services to approximately 100,000 customers in the United

28  States, including "many" in California.  Compl. ¶ 16.  Plaintiff has not provided any other information
    about its business activities in California.

                                                    15

1    allegedly caused confusion among California consumers, California has an interest in adjudicating

2    this dispute.

3        Fifth, consideration of the most efficient judicial resolution is "no longer weighed heavily

4    given the modern advances in communication and transportation."  Therefore this factor is also

5    neutral because there may be witnesses and evidence located in both California and Washington.  *Id.*

6        Sixth, with respect to the importance of the forum to the plaintiff's interest in convenient and

7    effective relief, courts generally give little weight to the plaintiff's inconvenience.  *See id.*  Here, a

8    forum is likely available in the state of Washington, and Plaintiff has not provided any evidence or

9    allegations as to whether it would be costly and inconvenient for Plaintiff to litigate in Washington.

10       Seventh, with respect to the existence of an alternative forum, Defendants have not come

11   forward to request an alternative forum, and the Court is unaware of whether there is such a forum.

12   Therefore, this factor is neutral.

13        Balancing these seven factors, the Court concludes that the exercise of jurisdiction over

14   Defendants is reasonable.

15       **B.**     **Venue**

16       Pursuant to 28 U.S.C. § 1391(b), venue is proper in ". . .a judicial district in which a

17   substantial part of the events or omissions giving rise to the claim occurred[.]"  Here, Defendants'

18   alleged conduct, including the posting of false and misleading information about Plaintiff and the

19   infringement of Plaintiff's trademark rights occurred in the Northern District of California.

20   Specifically, Defendants posted their shill reviews on many consumer websites that are based out of

21   Northern California and were accessible to California residents.  Supp. Memo 8.  Furthermore,

22   Defendants' infringing activities, including false advertising and violation of the Anticybersquatting

23   Consumer Protection Act, allegedly confused California consumers and therefore affected Plaintiff's

24   business opportunities in California.  *Id.* at 9.  For these reasons, the Court concludes that venue is

25   proper in the Northern District of California.

26       **C.**     **Legal Standard Regarding Entry of Default Judgment**

27       Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a

28   default judgment where the clerk, under Rule 55(a), has previously entered the party's default based

upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment.  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The district court has discretion in its decision to grant or deny relief upon an application for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980);  *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment).  The court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default.  *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d).  On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered.  *Id.*

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded  in the [complaint]."  Fed. R. Civ. P. 54(c).

### D.   *Eitel* Factors

#### 1.   Possibility of Prejudice to Plaintiff

To the extent that Defendants have failed to appear or otherwise defend this action, Plaintiff will be left without a remedy if default judgment is not entered in its favor.  This factor therefore favors entry of default judgment.

#### 2.   Excusable Neglect

There is no evidence in the record that Defendants' failure to appear or otherwise defend was

**United States District Court**
For the Northern District of California

the result of excusable neglect.  Rather, Defendants failed to appear after being served with the Complaint in this action, indicating that their failure to appear was willful.  What is more, Plaintiff's counsel claims he has spoken to Defendant Joseph Ward Clark on numerous occasions over the phone and via email.  Declaration of Nathan E. Ferguson in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 36) at ¶ 11.  Plaintiff further claims Mr. Clark has indicated he is the principal of SRS and is well aware of this lawsuit. *Id.*  Therefore, this factor favors entry of default judgment.

### 3.    Amount at Stake

This factor balances the amount of money at stake in the claim in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471-72.  Here, Plaintiff initially prayed for injunctive relief and for several forms of monetary damages, including general, statutory and punitive.  Compl. at ¶¶ A-J.  However, Plaintiff no longer requests any monetary damages and only seeks permanent injunctive relief.  Motion 3.  Plaintiff seeks injunctive relief in this case to prevent economic harm, protect its business reputation, protect its trademark, and prevent other harm that was caused by Defendants' conduct.  Motion 7.  Therefore, for these reasons, this factor weighs in favor of granting default judgment.

### 4.    Possibility of Dispute

This factor weighs the possibility that material facts may be in dispute. *Eitel*, 782 F.2d at 1471-72.  Here, because Defendants have failed to respond in this action, there is an absence of material facts in dispute in the record from which the Court may weigh this factor.  Therefore, this factor is neutral.

### 5.    Policy for Deciding Cases on the Merits

The court also must weigh the policy consideration that whenever reasonably possible, cases should be decided upon their merits. *Id.* at 1472.  The existence of Rule 55(b), though, indicates that this preference towards disposing of cases on the merits is not absolute. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Here, because Defendants have failed to respond in this action, deciding this case on its merits is not possible.  Therefore, this factor is neutral.

*///*

18

United States District Court

For the Northern District of California

6.      **Allegations and Substantive Merits of Claims**

I)      **Intentional Interference with Prospective Economic Advantage**

To prevail on a claim of intentional interference with prospective economic advantage, a plaintiff must show the existence of "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (citation omitted). A plaintiff must also allege an act that is wrongful independent of the interference itself. *Id.*

Here, Plaintiff contends that Defendants' conduct, including the posting of shill reviews and false information on consumer websites, has damaged Plaintiff's reasonable probability of prospective economic relationships with future customers seeking remote computer support. Compl. at ¶¶ 73-74. The Court finds, however, that Plaintiff has not adequately pleaded the last two elements of this claim as it has not provided a showing of actual disruption caused by Defendants' conduct or any economic harm suffered as a result. Therefore, the Court will not grant default judgment as to this claim.

ii)     **Unlawful Business Practices and Unfair Competition - Cal. Bus. & Prof. Code § 17200 and common law**

Plaintiff alleges that Defendants' conduct described above constitutes unlawful business practices and unfair competition in violation of California Business & Professions Code §§ 17200, et. seq. Compl. at ¶¶ 77-80. Section 17200 provides that ". . .unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." Cal. Bus. & Prof. Code § 17200 (West). The plaintiff need only allege one of the three theories - unlawful, unfair or fraudulent business practice - to properly plead a claim under section 17200. *Med. Instrument Dev. Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. Aug. 10, 2005).

Unlawful business practice includes anything that is a business practice but is also forbidden

United States District Court

For the Northern District of California

1    by law. *Somerville v. Stryker Orthopaedics*, 2009 WL 2901591, at *2 (N.D. Cal. Sep. 4, 2009).

2    Unfair business practice refers to any practice whose harm outweighs any benefits. *Id.* "The court

3    must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

4    victim." *Id.* (quoting *Gafcon, Inc. v. Ponsor & Assoc.*, 98 Cal.App.4th 1338, 1425 n. 15 (2002)).

5    Finally, fraudulent business practice requires a showing that members of the public are likely to be

6    deceived by defendants' conduct, but allegations of actual deception are unnecessary. *Id.*

7         Here, the Court finds that Defendants' conduct violated Cal. Bus. & Prof. Code § 17200 for

8    three reasons.  First, the allegations presented by Plaintiff indicate that Defendants' conduct was

9    unfair and fraudulent.  Defendants' posting of shill reviews on consumer websites unfairly affected

10   Plaintiff's business opportunities and fraudulently deceived consumers shopping for remote

11   computer service on the internet.  Second, "[t]his circuit has consistently held that state common law

12   claims of unfair competition pursuant to [§ 17200] are 'substantially congruent' to claims made

13   under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).  Therefore,

14   because Plaintiff has adequately pleaded its Lanham Act claim, discussed below, Plaintiff's § 17200

15   claim is also adequately pleaded.  Third, because Plaintiff has also adequately pleaded its claim

16   under § 17500, as explained below, that is enough to support a § 17200 claim as well. *Arizona*

17   *Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern., Inc.*, 290 F.Supp.2d 1034, 1041 (N.D.

18   Cal. 2003) ("any violation of Section 17500 necessarily violates Section 17200. . . .Thus, a

19   misleading statement is an unfair business practice").  Therefore, default judgment is appropriate for

20   Plaintiff's unlawful business practices and unfair competition claims.

21              iii)    **False or Misleading Advertising under Cal. Bus. & Prof. Code §§
                       17500 et seq.; False Advertising in violation of § 43(a)(1)(B) the**
22                     **Lanham Act; 15 U.S.C. § 1125.**

23        Plaintiff maintains that Defendants' conduct amounted to false or misleading advertising

24   under Cal. Bus. & Prof. Code § 17500 (West), which provides:

25        It is unlawful for any person, firm, corporation,. . . to make or disseminate or cause to be
          made or disseminated before the public in this state, or to make or disseminate or cause to be
26        made or disseminated from this state before the public in any state, in any newspaper or other
          publication, or any advertising device. . .including over the Internet, any statement,
27        concerning that real or personal property or those services, professional or otherwise . .
          .which is untrue or misleading, and which is known, or which by the exercise of reasonable
28        care should be known, to be untrue or misleading.

**United States District Court**
For the Northern District of California

1    To prevail on a claim for false advertising, a plaintiff must show that the defendant, with the intent

2    to perform professional or other services, made a statement concerning those services that is untrue

3    or misleading**.** *Conifer Sec., LLC v. Conifer Capital LLC,* 2003 WL 1873270, at *2 (N.D. Cal. Apr.

4    2, 2003).  A statement is untrue or misleading if members of the public are likely to be deceived.

5    *Vega v. JPMorgan Chase Bank, N.A.*, 654 F.Supp.2d 1104, 1116 (E.D. Cal. 2009) (quoting *Chern v.*

6    *Bank of America,* 15 Cal.3rd 866, 876 (1976)).  What is more, "any violation of Section 17500

7    necessarily violates Section 17200. . . .Thus, a misleading statement is an unfair business practice."

8    *Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern., Inc.*, 290 F.Supp.2d 1034, 1041

9    (N.D. Cal. 2003) (internal citation omitted).

10          Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125, explicitly allows a private right of

11   action against a person who makes false and deceptive statements in a commercial advertisement

12   about their product.  *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010) (citing *Jarrow*

13   *Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 834-35 (9th Cir. 2002)).  Under the Lanham

14   Act, a prima facie case is established upon a showing that the defendant made a false statement

15   either about its own product or service or the plaintiff's.  *Id.* (citing *Newcal Indus, Inc. v. Ikon Office*

16   *Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008)).  A false statement is established either by showing

17   that the statement was literally false, or by showing the statement was literally true but was likely to

18   mislead or confuse consumers as evidenced by consumer surveys.  *Mutual Pharmaceutical Co. v.*

19   *Ivax Pharmaceuticals, Inc.*, 459 F.Supp. 2d 925, 932 (C.D. Cal. 2006) (citing *Southland Sod Farms*

20   *v. Stover Seed Co.,* 108 F.3d 1134, 1139-40 (9th Cir. 1997).  Where the statement in question in

21   literally false, a violation may be established without evidence of consumer confusion. *Id.* at 933.

22          In the present case, Plaintiff claims that Defendants' posting of shill reviews and false and

23   misleading information on consumer websites were literally false and if not literally false were likely

24   to confuse customers.  Compl. at ¶ 96.  Plaintiff further claims that these reviews were made in the

25   course of advertising Defendants' services and were likely to affect the decisions of members of

26   SRS's and iYogi's target audience - consumers of remote computer technical services.  *Id.* at ¶¶ 97-

27   99.  The Court finds that Plaintiff has adequately pleaded these two claims and therefore the entry of

28   default judgment here is appropriate.

iv)     **Trade Libel**

Trade libel is an intentional disparagement of the quality of property which results in pecuniary damage to plaintiff. *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 984 (N.D. Cal. 2010). Unlike classic defamation, trade libel is not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business. *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (citing *Guess, Inc. v. Superior Court*, 176 Cal.App.3d 473, 479, 222 Cal.Rptr. 79, 83 (1986)). In order to state a claim for trade libel, the plaintiff must show (1) a statement that (2) was false, (3) disparaging, (4) published to others, (5) induced others not to deal with it, and (6) caused special damages in the form of pecuniary loss. *New.Net, Inc. v. Lavasoft*, 356 F.Supp. 2d 1090, 1113 (C.D. Cal. 2004). In making this determination, the court must decide the "natural and probable effect" of the statement as read by an "average reader." *Robinson,* 732 F. Supp. 2d at 985 (citing *Hofmann*, 202 Cal.App.3d at 398, 248 Cal.Rptr. 384).

Here, the Court must deny the entry of default as to this claim because Plaintiff has not adequately pleaded the damages element. "A bare allegation of the amount of pecuniary loss is insufficient for the pleading of a trade libel claim." *New.Net*, F.Supp. 2d at 1113 (quoting *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp. 2d 1035, 1047 (C.D. Cal. 1998). In *New.Net*, the Court dismissed the plaintiff's trade libel claim for failing to plead the damages element. As in *New.Net,* the complaint in the present case only refers to an amount to be proved at trial and makes no attempt to show any loss of profits as a result of such publication. *Id.* Therefore, default judgment will not be entered as to Plaintiff's trade libel claim.

v)      **Violation of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)**

In order to state a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), a trademark owner must show the defendant (1) registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) had a bad faith intent to profit from that domain name. 15 U.S.C. § 1125(d)(1)(A) (West); *Verizon California Inc. v. Navigation Catalyst Systems, Inc.*, 568 F.Supp. 2d 1088, 1094 (C.D. Cal. 2008).

United States District Court

For the Northern District of California

In determining whether there is a likelihood of confusion under the ACPA, courts compare the plaintiff's mark with the name of the website.  *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004) (holding that there was a likelihood of confusion under the ACPA where defendant had registered websites including www. my-washingtonpost.com, www.mymcdonalds.com and www.drinkcoke.org); *see also Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F.Supp.2d 567 (E.D. Pa.2002) (holding that plaintiff owning Louis Vuitton mark was entitled to default judgment on ACPA claim based on defendant's use of domain name www.LouisVuitton- replicas.com).

A court should not look beyond the domain name to consider the content of the website. *Purdy*, 382 F.3d at 783.  "The inquiry under the ACPA is thus narrower than the traditional multifactor likelihood of confusion test for trademark infringement." *Id.*  Consequently, even if it might be evident from the content of the website that it is not sponsored by or affiliated with the plaintiff, there may nonetheless be a violation of the ACPA.  *Id.*; *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir.2001) (holding that domain name www. peta.org violated the ACPA because it was identical to the mark of the plaintiff, People for the Ethical Treatment of Animals, even though a visit to the site itself revealed that it was a parody and that the initials "peta" stood for People Eating Tasty Animals).

On the other hand, if the name of the domain at issue itself makes clear that it is not affiliated with the plaintiff, there can be no likelihood of confusion.  *See, e.g.*, *The Taubman Co. v. Webfeats*, 319 F.3d 770, 777 (6th Cir.2003) (holding that there was no likelihood of confusion on part of plaintiff who owned Taubman mark where defendant operated website with domain name www.taubmansucks.com); *Bally Total Fitness Holding Corp. v. Faber*, 29 F.Supp.2d 1161 (C.D.Cal.1998) (holding there was no likelihood of confusion on part of plaintiff owning Bally mark where defendant operated website with domain name www.ballysucks.com).

Here, Plaintiff asserts that Defendants have violated the ACPA through the registration and operation of "iyogireviewsonline.com."  Defendants registered and began using this domain name long after Plaintiff established its rights in the iYogi mark, Compl. at ¶¶ 21, 29, 105.  Additionally, there is little question that Defendants operated this website with bad faith intent to make a profit because it contained shill reviews and false information about Plaintiff.  The determining factor,

United States District Court

For the Northern District of California

1    then, is whether this domain name is "identical or confusingly similar" to the iYogi mark.  The Court

2    concludes that this domain name is confusingly similar to the iYogi mark because it uses the iYogi

3    name and it does not make clear that it is not affiliated with Plaintiff.  Therefore, the entry of default

4    judgment is appropriate as to Plaintiff's anticybersquatting claim.

5             **4.        Conclusion**

6             Based on consideration of the factors discussed above, it is recommended that default

7    judgment be entered against Defendants on the following claims: unlawful business practices and

8    unfair competition, under Cal. Bus. Prof. Code §§ 17200 *et seq*. and common law; false or

9    misleading advertising, under Cal. Bus. Prof. Code §§ 17500 *et seq*.; false advertising, under the

10   Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125; and violation of the Anticybersquatting Consumer

11   Protection Act, under 15 U.S.C. § 1125(d).  It is also recommended that default judgment should not

12   be entered as to Plaintiff's intentional interference with prospective economic advantage and trade

13   libel claims.

14   **E.       Remedies**

15            **1.        Injunctive Relief**

16            Plaintiff requests that the Court grant a permanent injunction barring Defendants from further

17   interfering with Plaintiff's business.  In particular, Plaintiff requests entry of the following

18   injunction:

19            2.  Defendants, Defendants' agents, partners, servants, or employees, or any others
                  acting in participation with Defendants, are hereby enjoined from:

20

21                    I.      publishing false, unsubstantiated, or misleading statements about
                              iYogi, iYogi's goods or services, or its employees, directors,
22                            principals, or officers;

23                    ii.     publishing false, unsubstantiated, or misleading statements about
                              Secure Remote Support or its goods and services, or its employees,
                              directors, principals or officers;
24

25                    iii.    posting or otherwise publishing on any consumer review or consumer
                              complaint website, or similar website, any statements regarding iYogi,
                              iYogi's goods or services, or its employees, directors, principals or
26                            officers, or Secure Remote Support or its goods or services, or its
                              employees, directors, principals or officers (a) attributable to anyone
27                            other than the actual author, and (b) without disclosing a material
                              relationship between the author and Secure Remote Support or any
28                            successor thereto;

iv.     otherwise defaming, slandering, or libeling iYogi or its employees, directors, principals, or officers;

v.      registering any Internet domain name consisting in whole or in part of the letter string IYOGI; and

vi.     causing any third party to participate in any of the activities described in (1) – (5); and

3. directing Defendant to:

I.      transfer ownership of the domain name registration for <iyogireviewsonline.com> to Plaintiff, including by taking all steps within their power to have the domain name registrar, SingleHop. Inc., or such other registrar that may manage the domain name registration, facilitate the transfer to iYogi;

ii.     transfer to Plaintiff all electronic files containing any software code or content that has appeared on the <iyogireviewsonline.com> website, and delete all copies of same from all forms of media owned by, in the possession of, or under the control of Defendant;

iii.    diligently attempt to remove, delete, or obscure all website comments, reviews, ratings, or other statements referencing iYogi that (I) were posted by Defendants or Defendants' agents, or at the direction of Defendants or Defendants' agents, or (ii) that were posted by any individual or entity with the goal of improving Secure Remote Support's search engine optimization or web visibility (collectively, "Reviews");

iv.     in the event that Defendant cannot remove Reviews pursuant to Section (3) above within ten days of the entry of this judgment, after consultation with iYogi as to the form and content of the communication, and at iYogi's option, contact the operators of all websites on which Reviews remain and (I) transmit to the operator a copy of this judgment and accompanying order, (ii) disclose that Defendants published or caused the Reviews to be published in bad faith, (iii) disclose that the Reviews contain false, misleading, or unsubstantiated information, and (iv) request that the website operator remove such Reviews;

v.      in the event that Defendants cannot remove or cause to be removed Reviews pursuant to Sections (3) or (4) above, post new comments associated as closely as possible with such Reviews, stating either that (I) "The review/comment above was posted by Secure Remote Support or its agents, rather than the attributed author, in an attempt to increase Secure Remote Support's SEO and to disparage iYogi and its services. The comment/review does not reflect SRS's or the author's actual experience with iYogi. Secure Remote Support regrets that its actions caused this review/comment to be published. SRS is posting this message pursuant to a Court Order from the U.S. District Court for the Northern District of California" or (ii) another statement approved in advance by Plaintiff;

vi.     publish the following message clearly and conspicuously on the

**United States District Court**
For the Northern District of California

1   landing page of Secure Remote Support's primary website: "Secure
2   Remote Support formerly engaged in the practice of posting shill
    reviews, or hiring others to post shill reviews, referencing Secure
    Remote Support and its competitors, including iYogi. Secure Remote
3   Support regrets that this conduct resulted in reviews/comments being
    posted on various websites that included false, misleading, or
4   unsubstantiated claims regarding iYogi.  As a result of a lawsuit filed
    by iYogi, Secure Remote Support has been permanently enjoined by
5   the U.S. District Court for the Northern District of California from
    posting or causing to be posted further shill reviews referencing
6   iYogi."

7            vii.   issue a press release, at iYogi's expense, stating: "On February 8,
                    2011, iYogi, a leading provider of remote computer technical support
8                   services, filed a lawsuit against Secure Remote Support, a
                    Washington-based provider of remote computer technical support
9                   services, alleging false advertising, unfair competition, trade libel, and
                    related counts under federal and state law. The suit resulted from
10                  Secure Remote Support's practice of promoting itself and disparaging
                    its competitors, including iYogi, through posting shill reviews that
11                  appeared on third-party websites, as well as Secure Remote Support's
                    own website at <iyogireviewsonline.com>. Pursuant to a court order
12                  issued in the case on [insert date of Order] by the U.S. District Court
                    for the Northern District of California, Secure Remote Support, has
13                  been enjoined from continuing this practice. The shill reviews
                    appeared, and in many cases continue to appear, on third-party
14                  websites, including <complaintsboard.com>, <pissedconsumer.com>,
                    <sitejabber.com>, <scamfruadalerts.com>, <digg.com>,
15                  <helpdeskgeek.com>, <merchantcircle.com>, <iripoff.com>,
                    <citysearch.com>, <associated.content.com>, <helloatlanta.com>,
16                  <shamscam.com>, <insiderpages.com>, <computerrepairexpert.com>,
                    and <judysbook.com>. A copy of iYogi's complaint can be found at
17                  [link to be inserted] and the full judgment and order can be found at
                    [link to be inserted]. Secure Remote Support deeply regrets that its
18                  marketing activities led to the unfair disparagement of iYogi" or
                    consisting of other language mutually agreed to by the parties.

19

20   [Proposed] Order Granting Plaintiff's Motion for Default Judgment (Dkt. No. 35-1) ("[Prop] Order")

21   ¶¶ 2-3.

22          Cal. Bus. & Prof. Code §§ 17204 and 17535 explicitly permit injunctive relief to be sought

23   by any person who has suffered injury in fact and has lost money or property as a result of a

24   violation of these chapters.  In this context, injunctive relief is provided not only to protect the

25   property rights of the plaintiff, but also to protect the general public from fraud and deceit.  *People*

26   *ex rel. Mosk v. National Research Co. of Cal.*, 201 Cal.App.2d 765, 771 (1962).  Furthermore, the

27   court's power to enjoin conduct that violates § 17200 is broad.  *Id.* at 772 ("[I]t would be impossible

28   to draft in advance detailed plans and specifications of all acts and conduct to be prohibited since

1   unfair or fraudulent business practices may run the gamut of human ingenuity and

2   chicanery."(internal citations omitted)).

3       Injunctive relief is also appropriate for violations of the Lanham Act.  *See* 15 U.S.C. §§ 1116,

4   1125.  To succeed on a false advertising claim, under the Lanham Act, the plaintiff need not

5   establish actual falsity.  *CKE Restaurant v. Jack in the Box, Inc.*, 494 F.Supp. 2d 1139, 1143 (C.D.

6   Cal. 2007).  Even if an advertisement is not literally false, relief is available under the Lanham Act

7   "if it can be shown that the advertisement has misled, confused, or deceived the consuming public."

8   *Id.* (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997).  With

9   respect to a violation of the Anticybersquatting Consumer Protection Act, "a court may order the

10   forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the

11   mark."  15 U.S.C. § 1125(d)(1)(c).

12       In order to obtain injunctive relief, a plaintiff must show either: (1) probable success on the

13   merits and the possibility of irreparable harm, or (2) the existence of serious questions on the merits

14   and the balance of hardships tipping in its favor.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609,

15   612 (9th Cir. 1989).

16       Here, the Court finds that Plaintiff is entitled to injunctive relief.  As explained above,

17   Plaintiff has adequately pleaded its claims for unlawful and unfair business practices under Cal. Bus.

18   & Prof. Code § 17200, false and/or misleading advertising under Cal. Bus. & Prof. Code § 17500

19   and 15 U.S.C. § 1125(a), and violation of the Anticybersquatting Consumer Protection Act under 15

20   U.S.C. § 1125(d).  Plaintiff has also shown that Defendants' conduct may confuse or mislead

21   potential consumers shopping for Plaintiff's services.  Furthermore, Plaintiff claims that without the

22   Court's intervention, Defendants' conduct will continue to harm Plaintiff's business opportunities

23   and reputation.  Therefore, Plaintiff has demonstrated probable success on the merits and the

24   possibility of irreparable harm.

25           **2.     Scope of Relief**

26       Having determined that Plaintiff is entitled to injunctive relief, the Court must determine the

27   appropriate scope of Plaintiff's requested relief.  Rule 65 of the Federal Rules of Civil Procedure

28   requires that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance;

27

United States District Court

For the Northern District of California

shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained." Fed. R. Civ. P. 65(d).  Generally, "an injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law." *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004).

The Court recommends granting Plaintiff's requested injunctive relief, as set forth in detail above, with the revisions and exceptions discussed below:[5]

1.   [Prop] Order ¶ 3(iii) should be revised to say: "diligently attempt to remove, delete, or obscure all website comments, reviews, ratings, or other statements referencing iYogi that were posted by Defendants or Defendants' agents, or at the direction of Defendants or Defendants' agents (collectively, "Reviews")" This revision omits the required deletion of all postings referring to iYogi by *anyone* designed to promote the visibility of Defendant on the web.  Such a deletion is not aimed at postings by Defendants or their agents and is therefore overbroad.

2.   [Prop] Order ¶ 3(iv) should be revised to say: "in the event that Defendant cannot remove Reviews pursuant to Section (3) above within ten days of the entry of this judgment, after consultation with iYogi as to the form and content of the communication, and at iYogi's option, contact the operators of all websites on which Reviews remain and (I) transmit to the operator a copy of this judgment and accompanying order, (ii) disclose that Defendants published or caused the Reviews to be published, and (iii) request that the website operator remove such Reviews."  This revision is necessary because the original request was not narrowly tailored to address Plaintiff's injury, but rather was designed to punish Defendants.

3.   [Prop] Order ¶ 3(vi-vii) are both not narrowly tailored to remedy Plaintiff's specific harm and therefore should be removed in their entirety.

## IV.   CONCLUSION

It is recommended that the Court GRANT the Motion.  Default judgment should be entered in favor of Plaintiff against Defendants Secure Remote Support, Inc. and Joseph Ward Clark for the following claims: 1) unlawful business practices and unfair competition, under Cal. Bus. Prof. Code §§ 17200 *et seq*. and common law; 2) false or misleading advertising, under Cal. Bus. Prof. Code §§ 17500 *et seq*.; 3) false advertising, under the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125; and 4) violation of the Anticybersquatting Consumer Protection Act, under 15 U.S.C. § 1125(d).  Default judgment should not be entered against Defendants for intentional interference with prospective

---

[5] Plaintiff's counsel did not object to these revisions at the Motion hearing.

economic advantage and trade libel.

A permanent injunction should be entered against Defendants as follows:

1.    Defendants, Defendants' agents, partners, servants, or employees, or any others acting in participation with Defendants, are hereby enjoined from:

        I.    publishing false, unsubstantiated, or misleading statements about iYogi, iYogi's goods or services, or its employees, directors, principals, or officers;

        ii.    publishing false, unsubstantiated, or misleading statements about Secure Remote Support or its goods and services, or its employees, directors, principals or officers;

        iii.    posting or otherwise publishing on any consumer review or consumer complaint website, or similar website, any statements regarding iYogi, iYogi's goods or services, or its employees, directors, principals or officers, or Secure Remote Support or its goods or services, or its employees, directors, principals or officers (a) attributable to anyone other than the actual author, and (b) without disclosing a material relationship between the author and Secure Remote Support or any successor thereto;

        iv.    otherwise defaming, slandering, or libeling iYogi or its employees, directors, principals, or officers;

        v.    registering any Internet domain name consisting in whole or in part of the letter string IYOGI; and

        vi.    causing any third party to participate in any of the activities described in (1) – (5); and

2.    directing Defendants to:

        I.    transfer ownership of the domain name registration for <iyogireviewsonline.com> to Plaintiff, including by taking all steps within their power to have the domain name registrar, SingleHop. Inc., or such other registrar that may manage the domain name registration, facilitate the transfer to iYogi;

        ii.    transfer to Plaintiff all electronic files containing any software code or content that has appeared on the <iyogireviewsonline.com> website, and delete all copies of same from all forms of media owned by, in the possession of, or under the control of Defendant;

        iii.    diligently attempt to remove, delete, or obscure all website comments, reviews, ratings, or other statements referencing iYogi that were posted by Defendants or Defendants' agents, or at the direction of Defendants or Defendants' agents (collectively, "Reviews");

        iv.    in the event that Defendant cannot remove Reviews pursuant to Section (3) above within ten days of the entry of this judgment, after consultation with iYogi as to the form and content of the communication, and at iYogi's option, contact the operators of all websites on which Reviews remain and (I) transmit to the operator a copy of this judgment and accompanying order, (ii) disclose that Defendants published or caused the Reviews to be published, and

1    (iii) request that the website operator remove such Reviews.;

2    v.    in the event that Defendants cannot remove or cause to be removed Reviews
pursuant to Sections (3) or (4) above, post new comments associated as
3          closely as possible with such Reviews, stating either that (I) "The
review/comment above was posted by Secure Remote Support or its agents,
4          rather than the attributed author, in an attempt to increase Secure Remote
Support's SEO and to disparage iYogi and its services. The comment/review
5          does not reflect SRS's or the author's actual experience with iYogi. Secure
Remote Support regrets that its actions caused this review/comment to be
6          published. SRS is posting this message pursuant to a Court Order from the
U.S. District Court for the Northern District of California" or (ii) another
7          statement approved in advance by Plaintiff.

8    IT IS SO ORDERED.

9    Dated:  October 24, 2011

10

11   _____
JOSEPH C. SPERO
12   United States Magistrate Judge